FILED

JUL 0 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
        Plaintiff,

                                      CV 09-690-PK

EMITERIA CORTES BUSTOS, FLORIBERTA
CORTES BUSTOS, ISAAC CORTES BUSTOS,
and EDUARDO CRISPIN ZUNIGA,            OPINION AND
        Intervenor Plaintiffs                ORDER

v.

WILLAMETTE TREE WHOLESALE, Inc.,
        Defendants.

PAPAK, Magistrate Judge:

        Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action against

defendant Willamette Tree Wholesale, Inc. ("Willamette Tree"), on June 18, 2009. That same

day, Emiteria Cortes Bustos ("Emiteria"), Floriberta Cortes Bustos ("Floriberta"), Isaac Cortes

Bustos ("Isaac"), and Eduardo Crispin Zuniga moved to intervene as plaintiffs; the court granted

their motion on June 22, 2009.

        Now before the court are Willamette Tree's motion (#54) for a protective order to

preclude EEOC from pursuing further discovery regarding Willamette Tree's financial condition

and plaintiffs' motion (#57) to prevent Willamette Tree from pursuing discovery regarding (i)

Page 1 - OPINION AND ORDER

intervenor plaintiffs' immigration status, (ii) whether Emiteria has ever used another name, (iii) why Emiteria did not approach law enforcement in connection with sexual violence she experienced in the workplace, (iv) intervenor plaintiffs' third-party employment records, and (v) Emiteria's sexual history.  I have considered the parties' motions and all of the pleadings on file. For the reasons set forth below, Willamette Tree's motion is denied, and plaintiffs' motion is granted in part and denied in part, as set forth below.

## LEGAL STANDARD

"A party . . . from whom discovery is sought may move for a protective order in the court where the action is pending. . . ."  Fed. R. Civ. P. 26(c)(1).  Rule 26(c) provides that a court may for "good cause" issue such a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> * * * [or]
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. . . .

*Id.*  To obtain such a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery.  Fed. R. Civ. P. 26(c)(1); *see also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002).

## FACTUAL BACKGROUND

EEOC brought this action against Willamette Tree under Title VII of the Civil Rights Act

of 1964 and Title I of the Civil Rights Act of 1991, alleging that Willamette Tree subjected

Emiteria, Floriberta, and a class of similarly situated female employees to a hostile

work environment because of sex, and that Willamette Tree retaliated against Emiteria,

Floriberta, Zuniga, Isaac, and a class of similarly situated employees for complaining about the

hostile work environment at Willamette Tree. Intervenor plaintiffs allege Willamette Tree's

liability for sexual harassment under 42 U.S.C. § 2000e-2(a) and O.R.S. 659A.030(1)(a) and (b)

and for retaliation under 42 U.S.C. § 2000e-3(a) and O.R.S. 659A.030(1)(f), based on allegations

that Willamette Tree knowingly permitted intervenor plaintiffs' supervisors to subject Emiteria

and Floriberta to sexual harassment in the workplace and knowingly permitted one of intervenor

plaintiffs' supervisors to subject Emiteria to repeated sexual violence, and that Willamette Tree

retaliated against all intervenor plaintiffs when they complained about the sexual harassment and

sexual violence, including by terminating their employment. Plaintiffs have pled and are seeking

punitive damages in this action.

    EEOC served Willamette Tree with a set of interrogatories and requests for production of

documents on February 26, 2010. Among its requests, EEOC sought detailed information

regarding Willamette Tree's financial status and corporate structure. Willamette Tree refused to

respond to the requests regarding financial structure and corporate identity other than by

producing unaudited and uncertified documents described as "balance sheets" for 2007-2009, on

the grounds that the requests are overbroad, unduly burdensome and not reasonably calculated to

lead to the discovery of admissible evidence.

    On April 27, 2010, EEOC served Willamette tree with a notice of deposition and

subpoena *duces tecum*, again regarding the details of Willamette Tree's financial status and

Page 3 - OPINION AND ORDER

corporate structure. Willamette Tree refused to comply with the notice and subpoena.

During its deposition of the intervenor plaintiffs, Willamette Tree asserted a right to inquire into or review intervenor plaintiffs' I-9 documentation and history of employment following their termination by Willamette Tree, and to inquire regarding Emiteria's sexual history, decision not to go to law enforcement in connection with the sexual violence she reports experiencing in the Willamette Tree workplace, and prior names, if any. Intervenor plaintiffs' counsel advised intervenor plaintiffs not to answer questions relating to these lines of inquiry, and intervenor plaintiffs in fact did not respond to such questions. Willamette Tree now seeks to re-notice intervenor plaintiffs' depositions for the purpose of requiring them to answer the questions they refused to answer at their first depositions.

## ANALYSIS

The court will not issue a protective order absent good cause. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210-1211, *citing Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see also San Jose Mercury News*, 187 F.3d at 1102 (to obtain a protective order a party must make a "particularized showing of good cause with respect to any individual document"). If the party seeking protection establishes that the requisite particularized harm will occur absent a protective order, the courts must then balance the public interest in access to the information against the party's private interest in shielding it from public scrutiny to determine whether a protective order is appropriate. *See Phillips*, 307 F.3d at 1211, *citing Glenmede Trust Co. v.*

Page 4 - OPINION AND ORDER

*Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

I.    **Willamette Tree's Motion for Protective Order**

Willamette Tree seeks a protective order to relieve it from its obligation to respond to EEOC's discovery requests relating to its financial status and corporate structure beyond the limited production it has already made, and to quash or limit EEOC's deposition notice of April 27, 2010. Willamette Tree argues that it is entitled to such an order because EEOC's requests are overbroad and unduly burdensome, and not reasonably calculated to lead to the production of admissible evidence. Willamette Tree offers no evidence or argument to suggest that it will suffer any particularized harm absent a protective order with respect to any specific responsive document or information.

In the absence of any particularized showing of specific prejudice or harm that would result if no protective order were granted, it would be inappropriate to grant Willamette Tree's motion. *See, e.g., Phillips*, 307 F.3d at 1210-1211. Moreover, Willamette Tree's generalized protestations of overbreadth and undue burden are insufficient to satisfy its burden to make a particularized showing of good cause for issuance of the requested protective order with respect to the specific documents and information requested. *See Beckman*, 966 F.2d at 476; *San Jose Mercury News*, 187 F.3d at 1102. Willamette Tree's motion is therefore denied.

My disposition of Willamette Tree's motion is based on Willamette Tree's failure to meet its burden of persuasion, and should not be read as suggesting that, if presented with a motion to compel discovery responses in connection with EEOC's discovery requests relating to Willamette Tree's financial status and corporate structure, I would necessarily grant the motion in its entirety. While EEOC is clearly entitled to at least some of the financial and corporate information

requested, *see e.g.*, *Newport v. Fact Concerts*, 453 U.S. 247, 270 (1981) ("evidence of a

tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that

should be awarded"); *Swinton v. Potomac Corp.*, 270 F.3d 794, 818-819 (9th Cir. 2001)

(defendant wealth can be a factor relevant to a punitive damages analysis); *see also United States

v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) ("[t]he overwhelming majority of

federal courts to have considered the question have concluded that a plaintiff seeking punitive

damages is entitled to discover information relating to the defendant's financial condition in

advance of trial and without making a *prima facie* showing that he is entitled to recover such

damages") (citations omitted); *EEOC v. Klockner H & K Machs.*, 168 F.R.D. 233, 235 (E.D. Wis.

1996) (granting EEOC's motion to compel documents containing details regarding the defendant's

financial information on the basis of the "general rule [that] a defendant's financial status is

relevant when a claim for punitive damages has been made"), it has not yet established in the

record before the court that it is entitled to all of the documents and information requested.

## II.     Plaintiffs' Motion for Protective Order

As noted above, plaintiffs seek an order to relieve intervenor plaintiffs of the obligation to

respond to discovery requests regarding (i) intervenor plaintiffs' immigration status, (ii) whether

Emiteria has ever used another name, (iii) why Emiteria did not approach law enforcement

regarding the sexual violence she suffered in the Willamette Tree workplace, (iv) intervenor

plaintiffs' third-party employment records, and (v) Emiteria's sexual history.

### A.     Immigration Status/I-9 Documentation; Emiteria's Use of Other Names

Plaintiffs argue that they are entitled to a protective order to shield from inquiry

information relating to the intervenor plaintiffs' I-9 documentation and immigration status, and to

other names, if any, that Emiteria may have used while living in this country.  In support of their

argument, plaintiffs assert that, if any of the intervenor plaintiffs were found to be undocumented

aliens, disclosure of their I-9 information could subject them to criminal prosecution and

deportation.  The courts of the Ninth Circuit recognize that to require aliens to produce proof of

immigration status would have a potentially chilling effect on meritorious claims that might

otherwise be brought by documented or undocumented aliens.  *See, e.g., Rivera v. Nibco, Inc.,*

364 F.3d 1057, 1063 (9th Cir. 2004).  Because plaintiffs have successfully made a particularized

showing of the harm that would result absent the requested protective order, I must balance

intervenor plaintiffs' private interest in shielding their I-9 documentation from public scrutiny

against the public interest in access to the information.

Willamette Tree argues that it is entitled to ask questions regarding and/or to review

intervenor plaintiffs' I-9 documentation and to learn whether Emiteria has used other names for

employment purposes in this country, not because it is interested in intervenor plaintiffs'

immigration status, but rather so that it can use the information in order to obtain an accurate

picture of each intervenor plaintiff's history of employment prior to coming to work for

Willamette Tree.  Willamette Tree argues that it is entitled to information identifying all

employers intervenor plaintiffs worked for prior to Willamette Tree because it needs to determine

whether any of those employers had sexual harassment policies or complaint reporting procedures

in place.  Willamette Tree argues that whether intervenor plaintiffs' prior employers had such

policies or procedures is relevant here because, although Willamette Tree itself had no such

policies or procedures, intervenor plaintiffs could have followed policies or procedures put in

place by their prior employers and thereby "avoided the harm they alleged they experienced at

Willamette Tree."

I find Willamette Tree's arguments unpersuasive. Intervenor plaintiffs' knowledge or lack of knowledge of sexual harassment policies or complaint reporting procedures put in place by employers other than Willamette Tree has no bearing on whether the intervenor plaintiffs took reasonable steps to avoid the sexual harassment and violence Emiteria and Floriberta allege they experienced at Willamette Tree itself. Moreover, it is undisputed that intervenor plaintiffs attempted to report the sexual harassment and violence Emiteria and Floriberta reported experiencing; it is their efforts to complain about the sexual harassment and violence that allegedly caused Willamette Tree's acts of retaliation against them. In consequence, the public interest in disclosure of the intervenor plaintiffs' I-9 information or Emiteria's use of alternate names is minimal. Such information is neither directly relevant to plaintiffs' claims or Willamette Tree's defenses in this action nor reasonably calculated to lead to the production of admissible evidence.

By contrast, the intervenor plaintiffs' private interest in shielding the I-9 documentation and information regarding Emiteria's use of other names from public scrutiny is significant. Disclosure of the information could expose some or all of the intervenor plaintiffs to criminal sanctions or to deportation. Intervenor plaintiffs' private interest in shielding the information from scrutiny clearly outweighs the public interest in disclosure. Indeed, the public interest would be far better served by avoiding the potential chilling effect on meritorious employment discrimination claims that requiring disclosure might have than by requiring disclosure, even in the absence of the potential for harm to these particular claimants.

For the foregoing reasons, plaintiffs' motion for protective order is granted as to inquiry

regarding intervenor plaintiffs' immigration status and I-9 documentation and regarding Emiteria's use of other names.

**B.    Post-Willamette Tree Employment Records**

Plaintiffs argue that they are entitled to a protective order to prevent Willamette Tree from issuing subpoenas to intervenor plaintiffs' post-Willamette Tree employers, on the ground that permitting Willamette Tree to do so could potentially prejudice their current employers against them and lead to the termination of their current employment, would have an intimidating effect on the intervenor plaintiffs, and would violate intervenor plaintiffs' legitimate privacy interests in the contents of their employee files. I agree with plaintiffs that permitting Willamette Tree to issue subpoenas to intervenor plaintiffs' current employers could jeopardize intervenor plaintiffs' employment status, and that production of any intervenor plaintiff's personnel records from any employer would infringe upon intervenor plaintiffs' legitimate privacy interests. Because plaintiffs have successfully made a particularized showing of the harm that would result absent the requested protective order, I must balance intervenor plaintiffs' private interest in shielding their post-Willamette Tree employment records from public scrutiny against the public interest in access to the information.

Willamette Tree argues that it is entitled to intervenor plaintiffs' post-Willamette Tree employment records because, it alleges, Floriberta's account of her last day at work at Willamette Tree contains inconsistencies that might be clarified by seeing "how she has represented the end of her employment at Willamette Tree with prospective employers," and because Floriberta and Emiteria have each alleged that they missed work at post-Willamette Tree employers due to the emotional distress they experienced while employed by Willamette Tree. I note, however, that

neither Floriberta nor Emiteria seeks compensatory damages in connection with such missed work, although it appears that they may intend to rely on the fact of having missed days of work in support of their claims to have suffered compensable severe emotional distress.

Because Emiteria and Floriberta appear to premise their claims for emotional distress damages in part on the fact of having missed work in their post-Willamette Tree employment, their employers' records of time worked and of time missed are material to their claims and to Willamette Tree's defenses in this action.  In light of the relevance of Emiteria and Floriberta's post-Willamette Tree employment records to issues raised in this action, I find that the public interest in disclosure of such records outweighs intervenor plaintiffs' privacy interest in the records.  By contrast, I do not find that the public interest outweighs intervenor plaintiffs' private interest in avoiding the risk of jeopardizing their current employment that might be incurred if their current employers were required to comply with the terms of a third-party records subpoena.

I therefore grant plaintiffs' motion for a protective order in part, and order that Willamette Tree shall not issue third-party records subpoenas to Emiteria's or Floriberta's current employers and shall neither issue third-party records subpoenas to any of Isaac's or Zuniga's post-Willamette Tree employers nor request that Isaac or Zuniga produce such records in discovery.  However, I deny the motion to the extent it seeks an order to prevent Willamette Tree from issuing subpoenas to any of Emiteria's or Floriberta's post-Willamette Tree employers other than their current employers, and to the extent it seeks an order to prevent Willamette Tree from requesting that Emiteria or Floriberta produce their own personnel records from any post-Willamette Tree employer.

As I noted in connection with my disposition of Willamette Tree's motion for protective

Page 10 - OPINION AND ORDER

order, the fact that the motion is denied in part should not be construed as suggesting that Willamette Tree is necessarily entitled to unfettered discovery in connection with the lines of inquiry as to which the motion is denied.

### C.   Emiteria's Sexual History

Willamette Tree asserts its entitlement to depose, not Emiteria herself, but Floriberta, Isaac, Zuniga, and other Willamette Tree employees acquainted with Emiteria regarding her sexual and/or romantic relationships during and after her employment by Willamette Tree. Plaintiffs argue that such inquiry would embarrass and humiliate Emiteria, and would lead to the introduction of prejudicial and irrelevant information regarding her sexual proclivities. I find that plaintiffs have met their burden to show that disclosure of information regarding Emiteria's sexual history would at least potentially be harmful and prejudicial to her. I must therefore balance Emiteria's private interest in shielding her sexual history from public scrutiny against the public interest in access to the information.

Willamette Tree argues that it is entitled to engage in the proposed line of inquiry because Emiteria "put her reputation in controversy" by testifying that she does not go out since her experience at Willamette Tree but rather spends whole days in her home, behind locked doors. Willamette Tree further argues that Emiteria put her reputation in controversy by testifying that she "suffered headaches, has difficulty sleeping and feels sick since she stopped working for Willamette Tree.

I disagree with Willamette Tree that the testimony summarized above was sufficient to put Emiteria's reputation "in controversy" in this action. Evidence that Emiteria "was, in fact, in at least one relationship at times relevant to this case" (as Willamette Tree asserts it has "reason to

Page 11 - OPINION AND ORDER

believe") would not establish that any of Emiteria's testimony was inaccurate. Evidence of Emiteria's sexual or romantic history is not clearly relevant to Emiteria's claims or to Willamette Tree's defenses, and its admission in this action would have a clear prejudicial effect. Moreover, to permit Willamette Tree to make inquiries into Emiteria's sexual or romantic history would intimidate Emiteria needlessly. *See, e.g.*, Fed. R. Evid. 412.

For the foregoing reasons, plaintiffs' motion for protective order is granted as to inquiry regarding Emiteria's sexual or romantic history.

### D.   Emiteria's Failure to Approach Law Enforcement Regarding her Allegations

Willamette Tree seeks to depose Emiteria as to why she did not approach law enforcement in connection with her claims to have suffered sexual violence at the hands of her supervisor at Willamette Tree. Plaintiffs characterize this line of inquiry as a "surreptitious attempt to get at her immigration status," suggesting that in the absence of the requested protective order her responses to such inquiry might expose her to the risk of criminal sanctions or deportation. Because plaintiffs have made the requisite showing of harm, I must balance Emiteria's private interest in shielding the reasons for her decision not to approach law enforcement from public scrutiny against the public interest in access to the information.

Willamette Tree asserts that its interest in the requested information is not to elicit information regarding Emiteria's immigration status, but rather to test the credibility of Emiteria's position that she did not consent to the sex acts inflicted on her person by her supervisor at Willamette Tree. However, Willamette Tree neglects to take note of Emiteria's deposition testimony, already in the record, that her supervisor threatened her and her family with violent reprisal should she tell anyone that he had raped her. In light of this testimony, requiring Emiteria

to answer further questions in an effort to determine whether she failed to report the alleged rapes to law enforcement because she consented to them would appear almost entirely superfluous, and the public interest in obtaining her answers to such questions correspondingly slight.

In consequence, I conclude that the public interest in obtaining access to additional information regarding Emiteria's failure to approach law enforcement is outweighed by Emiteria's private interest in shielding the information from public scrutiny. Plaintiffs' motion for protective order is therefore granted as to inquiry regarding Emiteria's decision not to approach law enforcement in connection with the acts of sexual violence she experienced in the Willamette Tree workplace.

## CONCLUSION

For the reasons set forth above, Willamette Tree's motion (#54) for a protective order is denied and plaintiffs' motion (#57) for a protective order is granted as to inquiry regarding intervenor plaintiffs' immigration status and I-9 documentation, granted as to inquiry regarding whether Emiteria has ever used another name, granted as to inquiry regarding the reasons for Emiteria's failure to approach law enforcement in connection with the sexual violence she suffered in the Willamette Tree workplace, granted as to the issuance of third-party records subpoenas to Emiteria's or Floriberta's current employers, granted as to the issuance of third-party records subpoenas to any of Isaac's or Zuniga's post-Willamette Tree employers, granted as to

/ / /

/ / /

/ / /

/ / /

Page 13 - OPINION AND ORDER

Isaac's and Zuniga's post-Willamette Tree personnel files, granted as to inquiry regarding

Emiteria's sexual or romantic history, and otherwise denied.


Dated this 8th day of July, 2010.

Honorable Paul Papak
United States Magistrate Judge