FILED

MAR 1 4 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
                Plaintiff,

                                        CV 09-690-PK

EMITERIA CORTES BUSTOS, FLORIBERTA
CORTES BUSTOS, ISAAC CORTES BUSTOS,
and EDUARDO CRISPIN ZUNIGA,             OPINION AND
                Intervenor Plaintiffs          ORDER

v.

WILLAMETTE TREE WHOLESALE, Inc.,
                Defendants.

PAPAK, Magistrate Judge:

      Plaintiff Equal Employment Opportunity Commission filed this action against defendant

Willamette Tree Wholesale, Inc. ("Willamette Tree"), on June 18, 2009, alleging Willamette

Tree's liability for violation of §§ 703(a) and 704(a) of Title VII (42 U.S.C. §§ 2000e-2(a) and

2000e-3(a)).  Also on June 18, 2009, Emiteria Cortes Bustos ("Emiteria"), Floriberta Cortes

Bustos ("Floriberta"), Isaac Cortes Bustos ("Isaac"), and Eduardo Crispin Zuniga moved to

intervene as plaintiffs in this action; the court granted their motion June 22, 2009.  Through their

complaint filed June 22, 2009, intervenor plaintiffs allege Willamette Tree's liability for violation

of §§ 703(a) and 704(a) of Title VII (42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)), and Or. Rev. Stat.

659A.030(1)(a), (b), (f), and (g). This court has subject-matter jurisdiction over the federal

claims alleged in this action pursuant to 28 U.S.C. § 1337 and 42 U.S.C. § 2000e-5(f)(3), and

over the state claims alleged in this action pursuant to 28 U.S.C. § 1367(a).

Now before the court are Willamette Tree's motion (#76) for partial summary judgment

(styled as a motion for summary judgment) as to the claims filed by intervenor plaintiffs

Emiteria, Isaac, and Zuniga and as to the claims filed by the EEOC on behalf of those same three

intervenor plaintiffs, and the EEOC's and intervenor plaintiffs' motion (#82) to pierce the

corporate veil. I have considered the parties' motions, oral argument on behalf of the parties, and

all of the pleadings on file. For the reasons set forth below, Willamette Tree's motion is denied

in its entirety, and the EEOC's and intervenor plaintiffs' motion is denied with leave to refile at

such time, if any, as the court awards a money judgment against Willamette Tree on plaintiffs'

claims in this action.

## LEGAL STANDARD

### I.     Motion for Partial Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues

exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied,* 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the nonmoving

party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## II.    Motion for Leave to Pierce the Corporate Veil

Where the court exercises federal question jurisdiction over an action, "federal common law, rather than state law, controls" the question whether a corporate shareholder may be held liable for debts of the corporation. *Viera v. Chehaiber*, Case No. 08-00182 JRG, 2010 U.S. Dist. LEXIS 24484, *7 (D. Cal. March 16, 2010). "The Ninth Circuit has applied 'a relatively rigorous veil-piercing standard, and ought to be placed among the circuits where it is relatively difficult to pierce the veil.'" *Id.*, *quoting* Stephen B. Presser, *Piercing the Corporate Veil* 3-114 to 3-115 (1999).

The courts of the Ninth Circuit recognize a three-factor test for piercing the corporate veil. It is appropriate to look beyond a corporation's assets to the assets of its shareholders in order to satisfy the corporation's liability on a judgment against it where (i) "there is such a unity of interest and ownership between the corporation and the shareholder that the two no longer exist as separate entities," *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979), *citing United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977), (ii) "failure to disregard the corporation would result in fraud or injustice," *id.*, *quoting Standard Beauty Supply*, 561 F.2d at 777, and (iii) either the incorporators of the corporation formed the corporation with fraudulent intent or the corporate form was fraudulently misused following incorporation, or both, *see Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773-774 (9th Cir. 1989).

## MATERIAL FACTS

Intervenor plaintiffs Emiteria, Floriberta, Isaac, and Zuniga are all former employees of defendant Willamette Tree. Emiteria, Floriberta, and Isaac are siblings, and Zuniga is Floriberta's husband. Emiteria was employed by Willamette Tree from December 5, 2006, through March 24, 2007, Floriberta from June 1, 2005, through February 17, 2008, Isaac from February 2006 through March 19, 2008, and Zuniga from June 1, 2005, through March 4, 2008.

### I.    Emiteria

According to evidence offered by the EEOC and by the intervenor plaintiffs, Emiteria was repeatedly raped by Willamette Tree employee Jaime Rodriguez, beginning in the first week of her employment and continuing regularly (approximately once or twice weekly) through the last day of her employment. The rapes were reportedly violent, and took place both in the workplace and, on one occasion (when Rodriguez scheduled all of the intervenor plaintiffs other than Emiteria to work at the same time), at the intervenor plaintiffs' home. According to Emiteria's testimony, Rodriguez repeatedly threatened to kill and/or harm Emiteria and her family members, including her family in Mexico, if she ever reported the rapes to anyone. He also reportedly told Emiteria, repeatedly, that all of the intervenor plaintiffs would be fired if she reported the assaults, and that if she quit her job he would find her and harm her.

The parties dispute whether Rodriguez was a supervisor as opposed to a co-worker of the intervenor plaintiffs. However, Willamette Tree acknowledges that there is at least a question of fact as to whether Rodriguez was a supervisor, and that therefore the court must presume his supervisory status for purposes of evaluating Willamette Tree's motion.

According to Rodriguez' own testimony and the testimony of Willamette Tree manager

Jorge Bañuelos, at some time in early 2007 a former co-worker of Emiteria's, Luis "El Guero" Bravo (whom the parties are currently unable to locate) reported to Bañuelos that Rodriguez had made Emiteria cry, either by sexually assaulting her or by attempting to do so. According to Emiteria's testimony, Rodriguez confronted her and told her she was fired for telling Bravo about the assaults. According to Emiteria, she begged to be allowed to keep her job, because she was dependent on the income it provided, and ultimately Rodriguez relented.

Plaintiffs offer Emiteria's testimony that, later, on approximately March 24, 2007, she successfully rebuffed an attempted assault by Rodriguez. Emiteria has since provided slightly different accounts of the events that followed. In her March 20, 2008, EEOC charge, Emiteria indicated that Rodriguez fired her "on the spot" in response to her resistance. In a declaration dated July 27, 2009, Emiteria testified that Rodriguez immediately fired her, saying, "From this moment, you don't have a job. Don't come anymore." On April 9, 2010, Emiteria testified in deposition that she told Rodriguez, "I quit your job," and that he responded, "your siblings and your family will pay for this." Finally, in a psychological evaluation of April 24, 2010, she reported to a psychologist that Rodriguez fired her immediately and threatened to harm her if she reported the assaults. It is in any event undisputed that this incident marked the end of her employment by Willamette Tree.

Plaintiffs offer evidence that, following the termination of Emiteria's employment, Rodriguez continued to call Emiteria's cell phone number, reiterating his threats to harm her and her family should she report the assaults. These calls reportedly continued until Emiteria changed her cell phone number. Because the cell phone was never in Emiteria's name, and because the intervenor plaintiffs are unable to recall when the cell phone number was changed,

the parties report that they are unable to determine the precise date on which the calls stopped;
nevertheless, plaintiffs offer Emiteria's declaration that the calls from Rodriguez stopped only
after she changed her telephone number "in the fall of 2007." It does not appear that the parties
have made any attempt to use the telephone records of Rodriguez or of Willamette Tree to
determine when the threatening phone calls stopped.

Emiteria filed a charge with the EEOC on March 21, 2008. As noted above, in her EEOC
charge Emiteria indicated that she had been fired by Rodriguez "on the spot" after resisting his
attempt to sexually assault her on March 24, 2007.

In a psychological evaluation, in deposition, and in declaration testimony, plaintiffs'
expert witness Dr. Fabiana Wallis, a clinical psychologist, opined that Emiteria's experiences
caused her to experience symptoms of clinical depression, post-traumatic stress, and suicidal
ideation, making it difficult for her to report or discuss the abuse she suffered at Rodriguez'
hands. Dr. Wallis further opined that Emiteria continued to be in fear for her safety years after
the last rape occurred, in part because of Rodriguez' threats, which reportedly continued after
Emiteria's employment ended. In addition, Emiteria's therapist, Jessica Tredinick (now
apparently Jessica Tredinick Varas), M.A., who provided counseling and therapy to Emiteria
beginning in approximately April 2010, testified that Emiteria was at that time still living in such
fear as a result of her experiences at Willamette Tree that she was hardly able to bring herself to
leave her room or to answer the door to her apartment. Tredinick testified to observing Emiteria
crying uncontrollably and displaying signs of panic when her telephone rang or when she heard
the sound of a motorcycle outside her apartment. Both Tredinick and Wallis opined that
Emiteria's social isolation, panic attacks, inability to function in public, and other symptoms

Page 6 - OPINION AND ORDER

were exacerbated by any reminder of the sexual assaults she experienced, including in particular being called upon to report or describe her experiences.

## II.   Isaac

Plaintiffs offer Isaac's deposition testimony that on approximately eight occasions he observed Willamette Tree employee David Gutierrez ogle his sister Floriberta, make crude jokes or lewd comments regarding her appearance, and/or make "catcalls" at her, in the workplace.  As with Rodriguez, the parties dispute whether Gutierrez was a supervisor as opposed to a co-worker of the intervenor plaintiffs.  However, also as with Rodriguez, Willamette Tree concedes for purposes of this motion that, at this stage of these proceedings, there is an unresolved question of material fact as to Gutierrez' supervisory status..

In January 2008, Gutierrez reportedly made a lewd comment regarding Floriberta while in Isaac's presence.  Isaac responded by telling Gutierrez, "¡Cálmate!"  I take judicial notice that the Spanish phrase "¡Cálmate!" may be literally translated as "calm down" or "settle down," and may be idiomatically translated as "knock it off."  Moreover, it appears likely on the evidentiary record before me that Isaac intended the phrase to have the latter connotation:  when he was asked in deposition, "Did you tell [Gutierrez] to stop making comments about your sister?" he replied (in English translation), "Yes.  I told him to calm down."

In March 2008, Willamette Tree terminated Isaac's employment.  According to Isaac's testimony, on March 20, 2008, he was told by a Willamette Tree employee in charge of payroll that he was laid off effective immediately, without prior warning, on Rodriguez' decision.[1]

---

[1]  Willamette Tree offers evidence that the decision to terminate Isaac's employment was made jointly by Bañuelos and Ray Gannon, Willamette Tree's principal.

According to Isaac's testimony, he called Rodriguez to ask him why, and Rodriguez told him that he was laid off because there was insufficient work to go around. Isaac further testified that Rodriguez told him he should not worry about finding new work because he was a good worker. Isaac further testified that he told Rodriguez that he believed his termination was due to Floriberta's complaints about sexual harassment, whereupon Rodriguez changed the subject without responding.

Plaintiffs offer Isaac's testimony that Willamette Tree hired two new general laborers on the same day he was fired, and that when he asked Rodriguez why Willamette Tree was hiring new laborers at the same time it was laying off laborers for lack of work, Rodriguez told him only that the hires had been effected on Jorge Bañuelos' orders. Willamette Tree appears to dispute that it made any new hires on or around the date of Isaac's termination.

### III.   Zuniga

According to Zuniga's deposition testimony, at some time in early 2007 he witnessed Gutierrez grope his wife Floriberta's breast in the workplace. At the time the incident occurred, he remained silent, fearing that he would lose his job if he reported the incident. Some days later, however, he and Floriberta reported the incident to Rodriguez. Subsequently, Zuniga, Floriberta, Rodriguez, and Gutierrez all met to discuss the issue. At the meeting, Gutierrez admitted to having touched Floriberta's breast, but claimed to have been joking around. According to Isaac's and Zuniga's testimony, Rodriguez ordered all parties never to mention the incident again.

Approximately two weeks later, Gutierrez and Zuniga were involved in a physical confrontation in the workplace, which apparently left Zuniga visibly bruised and bleeding.

According to Zuniga's testimony, Gutierrez became incensed when Zuniga followed Bañuelos' standing instruction that laborers must remain with their work team (and refrain from switching back and forth between lines of plantings) rather than follow Gutierrez' verbal instruction to switch lines, and without warning began striking Zuniga in the head with pruning shears. According to Zuniga, he responded by grabbing Gutierrez' shirt collar and telling him to "settle down," but Gutierrez continued striking him about the head with the shears and with his fists. Zuniga testifies that he had some pruning shears of his own at his belt, but that he threw his shears away and attempted merely to restrain Gutierrez and to defend himself. When he was unable to endure further abuse, he broke from Gutierrez, who shouted that he would kill Zuniga and ran at him again. Zuniga testifies that he fled from Gutierrez until he located a shovel, whereupon he turned back and faced Gutierrez in a defensive stance. He testifies that Gutierrez broke off his attack at that point.

Willamette Tree offers Gutierrez' testimony that Zuniga instigated the conflict, by threatening Gutierrez with a shovel. Willamette Tree does not appear to dispute that the altercation left Zuniga visibly bruised, and bleeding from cuts to his head and mouth. Willamette Tree subsequently terminated both Zuniga and Gutierrez for fighting in the workplace, apparently on Bañuelos' decision.

## IV.    Raymond Gannon

Plaintiff EEOC and the intervenor plaintiffs offer extensive evidence in an effort to establish that Raymond Gannon, Willamette Tree's principal and president, improperly and systematically milks the company's assets for his personal benefit and for the benefit of his family, has intermingled Willamette Tree's assets with his own to the extent that they are not

distinguishable from one another, and may be stripping Willamette Tree of its remaining assets in an effort to push the company into bankruptcy, possibly in order to avoid liability on the claims alleged against it in this action. Plaintiffs specifically offer evidence, *inter alia*, that Gannon and his wife purchased and took title to a home using Willamette Tree's assets as part of the purchase price, that in 2007 Gannon took a $350,000 "loan" from Willamette Tree and has repaid neither interest nor principal on the loan, that in 2009 (the year this action was filed) Gannon took an $80,000 "bonus" from Willamette Tree because he believed he "had to" and in any event "deserved it," despite averring that Willamette Tree's business had been bad that year and for the preceding few years and despite the fact that Willamette Tree had never previously paid out any such bonus, that Willamette Tree regularly pays Gannon's and his wife's personal credit card bills, electric bills, and vacations, that Willamette Tree pays Gannon's wife an annual $15,000 salary, and has done so for 21 years, despite the fact that she performs no services for the corporation, and in addition permits her to drive a corporation-owned vehicle, that Gannon is also the principal of a corporation and business enterprise wholly separate and distinct from Willamette Tree, Sir Fishalot, LLC, many of the costs and expenses of which are paid by Willamette Tree, and that Willamette Tree pays Sir Fishalot $2,000 per day for fishing trips for Gannon, his family, friends, and potential business clients on a regular basis.

## ANALYSIS

### I.    Willamette Tree's Motion for Partial Summary Judgment

As noted above, defendant Willamette Tree moves for summary judgment in its favor as to all of the claims alleged against it by or on behalf of intervenor plaintiffs Emiteria, Isaac, and Zuniga, and does not move for summary judgment in connection with the claims alleged against

Page 10 - OPINION AND ORDER

it by or on behalf of Floriberta.

### A.    Claims Alleged by or on Behalf of Emiteria

On behalf of Emiteria, all plaintiffs allege federal claims of sexual harassment and/or maintaining a hostile work environment in violation of 42 U.S.C. § 2000e-2(a), and of retaliatory discharge in violation of 42 U.S.C. § 2000e-3(a).  In addition, intervenor plaintiffs allege on Emiteria's behalf a second claim of sexual harassment and/or maintaining a hostile work environment in violation of Or. Rev. Stat. 659A.030(1)(a)-(b), a second claim of retaliatory discharge in violation of Or. Rev. Stat. 659A.030(1)(f), and a claim of aiding and abetting sexual harassment and retaliation in violation of Or. Rev. Stat. 659A.030(1)(g).  Willamette Tree moves for summary judgment as to the two federal claims (to the extent alleged on behalf of Emiteria) on the ground that Emiteria did not timely file an EEOC and/or BOLI charge prior to filing her federal claims and, in the alternative, in the event her EEOC charge is deemed timely, on the grounds that she alleged retaliatory discharge in her EEOC charge whereas the plaintiffs now offer evidence which, if established, would purportedly support a claim for constructive discharge only.  Willamette Tree further argues that the court should dismiss and/or decline to exercise supplemental jurisdiction over the remaining state-law claims (to the extent alleged on behalf of Emiteria) in consequence of plaintiffs' purported failure to state a valid, timely federal claim on Emiteria's behalf.

### 1.    Timeliness of Emiteria's EEOC Charge

A plaintiff alleging a Title VII hostile work environment claim must file a discrimination charge with the EEOC setting forth the material facts underlying the claim within 180 days following the last act contributing to the claim for the claim to be timely. *See* 42 U.S.C. § 2000e-

5(e)(1); *AMTRAK v. Morgan*, 536 U.S. 101, 116-117 (2002).  A plaintiff alleging a Title VII

retaliation claim must file a discrimination charge with the EEOC setting forth the material facts

underlying the claim within 180 days following  an act of retaliation for a claim premised on that

act to be timely.  *See* 42 U.S.C. § 2000e-5(e)(1).  Where, as in Oregon, a Title VII plaintiff may

file her charge with a state agency with authority to investigate discriminatory employment

practices, the filing period may be extended to 300 days.  *See* 42 U.S.C. § 2000e-5(e)(1);

*Mohasco Corp. v. Silver*, 447 U.S. 807, 817 (1980).  Here, the parties appear to agree that the

filing period applicable to Emiteria's EEOC charge was 300 days.

Willamette Tree notes that Emiteria's last day of work was March 24, 2007, and that her

EEOC charge was filed March 21, 2008, 362 days later.  Willamette Tree additionally notes that

plaintiffs have no evidence as to the precise date on which Emiteria changed her cell phone

number following the termination of her employment, and therefore lack documentary evidence

as to precisely how long Rodriguez' telephone calls to Emiteria continued following her

termination.  On the basis of these facts, Willamette Tree argues that Emiteria's EEOC charge

was not timely filed as to either of the federal claims alleged on her behalf.[2]

Plaintiffs offer several arguments in opposition to Willamette Tree's position.  First, they

argue that the charge was timely filed as to the hostile work environment claim alleged on

Emiteria's behalf, on the theory that Rodriguez' threatening phone calls, which Emiteria has

testified continued into the autumn of 2007, were acts contributing to the hostile work

environment despite the fact that they took place following Emiteria's departure from the

_____

[2] Willamette Tree does not specifically address Emiteria's declaration testimony that the
calls from Rodriguez continued into the fall of  2007.

Page 12 - OPINION AND ORDER

workplace. In connection with this argument, plaintiffs note, correctly, that the EEOC charge

would have been timely filed as to acts taking place in autumn 2007. Second, plaintiffs argue

that the charge was clearly timely filed as to the retaliation claim to the extent premised on those

of Rodriguez' telephone calls that took place on or after May 26, 2007. Third, plaintiffs argue

that the charge could be deemed timely filed as to the retaliation claim to the extent premised on

the retaliatory termination of her employment on the theory that the termination and Rodriguez'

subsequent threatening phone calls constituted a single continuing violation.

  Fourth, plaintiffs argue that Emiteria is entitled to equitable tolling of the EEOC filing

period, and/or that Willamette Tree should be deemed equitably estopped from invoking the

defense of untimeliness. An applicable limitations period may be equitably tolled "when the

plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or

when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim

on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *citing Alvarez-Machain v.*

*United States*, 107 F.3d 696, 700 (9th Cir. 1997). The *Stoll* court found equitable tolling

applicable when a plaintiff was sexually harassed and repeatedly raped by supervisors in the

workplace, and the experience left her "so broken and damaged" that she was unable to protect

her rights. *Id.* The *Stoll* plaintiff produced evidence tending to establish that she was

psychiatrically disabled during the relevant limitations period as a result of the *Stoll* defendant's

outrageous conduct towards her. On the basis of this evidence, the court found that her failure to

timely file was a result of a mental incapacity that constituted an "extraordinary circumstance"

beyond her control, and moreover that the mental incapacity was caused by the defendant's

wrongful conduct. *Id.* Indeed, the *Stoll* court found that the plaintiff's mental incapacity

Page 13 - OPINION AND ORDER

prevented her even from taking part in an agency relationship with her attorney, and held that the applicable limitations period was tolled under the circumstances, despite the fact that the *Stoll* plaintiff was at all material times represented by counsel. *Id.* The *Stoll* court expressly stated that the facts of the case before it were "*more than sufficient* . . . to establish equitable tolling" on the grounds both that the plaintiff was prevented from timely filing by the defendants' wrongful conduct *and* that extraordinary circumstances beyond the plaintiff's control prevented her from doing so; the court likewise expressly stated that the undisputed evidence supporting the plaintiff's explanation for the untimeliness of her charge was "*more than sufficient* to toll the [limitations period] as a matter of law." *Id.* (emphasis supplied).

Plaintiffs' evidence that Emiteria suffered psychological damage in consequence of her experiences at Willamette Tree, and that the damage she suffered caused her to be unable to file a timely EEOC charge is not as strong as that submitted by the *Stoll* plaintiff, who "presented overwhelming evidence that she was completely psychiatrically disabled during the relevant limitation period." *Id.* However, the *Stoll* court expressly set no minimum threshold of psychiatric disability that a plaintiff must labor under before tolling becomes appropriate, but instead indicated that tolling is applicable whenever a claimant is prevented from asserting a timely claim by a defendant's wrongful conduct or by extraordinary circumstances beyond the claimant's control. Moreover, Willamette Tree does not dispute Dr. Wallis' testimony or Ms. Tredinick's testimony regarding the psychological effects of the repeated workplace rapes Emiteria suffered, including severe depression, post-traumatic stress, suicidal ideation, social isolation and panic attacks, all exacerbated by any reminder of the sexual assaults, including being called upon to report or describe her experiences. Considered together with the evidence

Page 14 - OPINION AND ORDER

of Rodriguez' repeated threats to harm Emiteria and her family should she disclose the sexual

assaults to anyone, as well as the undisputed evidence that Emiteria was at all material times a

monolingual, illiterate Spanish speaker unrepresented by legal counsel, plaintiffs' evidence of

psychological damage suffered by Emiteria in consequence of the sexual assaults she suffered in

the Willamette Tree workplace is sufficient to establish the elements of equitable tolling under

*Stoll*.[3]

Because I find, for the foregoing reasons, that the filing period applicable to Emiteria's

federal claims was equitably tolled through at least the beginning of fall 2007, Willamette Tree is

not entitled as a matter of law to summary disposition of the claims alleged on Emiteria's behalf

on grounds of untimeliness. In light of this holding, I need not address Emiteria's alternative

arguments that her charge was timely filed on a continuing violation theory spanning periods

both before and after the termination of her employment.

### 2.    Allegations of Discharge vs. Constructive Discharge

As noted above, in the alternative to its untimeliness argument, Willamette Tree argues

that the federal claims alleged on Emiteria's behalf necessarily fail to the extent premised on the

---

[3] By contrast, plaintiffs' equitable estoppel argument is not well taken. Equitable
estoppel of a limitations period applies when a defendant takes action to prevent a plaintiff from
timely filing suit, as by misrepresenting or concealing facts necessary to support a discrimination
charge. "A finding of equitable estoppel rests on the consideration of a non-exhaustive list of
factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or
representations, (2) evidence of improper purpose on the part of the defendant, or of the
defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the
extent to which the purposes of the limitations period have been satisfied." *Santa Maria v.
Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *citing Naton v. Bank of California*, 649 F.2d
691, 696 (9th Cir. 1981). There is no indication in the evidentiary record that Emiteria elected
not to file her charge in reasonable reliance on any act or omission of Willamette Tree or its
employees that might have suggested that her claims were not yet ripe, or that the EEOC filing
period had been waived or was otherwise inapplicable.

termination of her employment, because in her EEOC charge Emiteria alleged that Rodriguez fired her directly, but in subsequent deposition testimony indicated that she told Rodriguez that she "quit [her] job." It is Willamette Tree's position that, in light of Emiteria's testimony, plaintiffs' theory can only be that Emiteria was constructively rather than actually discharged, a theory that was not alleged in her EEOC charge. Willamette Tree argues that, in consequence, Emiteria has not exhausted available administrative remedies as to her purported novel theory of constructive discharge.

Willamette Tree's argument is not persuasive. Plaintiffs affirm that they are proceeding under a theory of actual discharge, as alleged in Emiteria's EEOC charge, and not under a theory of constructive discharge. Moreover, the minor variations in Emiteria's testimony regarding her termination, especially considered in light of the fact that her testimony is provided through an interpreter, provide no basis for construing plaintiffs' claim as one necessarily premised on a theory of constructive discharge. Willamette Tree is therefore not entitled to summary judgment on the grounds that Emiteria failed to exhaust administrative remedies as to a novel theory of constructive discharge.

### 3.    State-Law Discrimination Claims

Based on the premise that it is entitled to summary judgment as to the federal claims alleged on behalf of Emiteria, Willamette Tree argues, as noted above, that the court should decline to exercise jurisdiction over the state-law claims alleged on Emiteria's behalf. In light of my findings, discussed above, that Willamette Tree is not, in fact, entitled to summary judgment as to the federal claims alleged on Emiteria's behalf, the issue is moot: no grounds exist for the court to decline to exercise jurisdiction over the state law claims alleged on Emiteria's behalf.

**B.     Claims Alleged on Behalf of Isaac**

On behalf of Isaac, all plaintiffs allege a federal claim of retaliatory discharge in violation

of 42 U.S.C. § 2000e-3(a).  In addition, intervenor plaintiffs allege on Isaac's behalf a second

claim of retaliatory discharge in violation of Or. Rev. Stat. 659A.030(1)(f), and a claim of aiding

and abetting retaliation in violation of Or. Rev. Stat. 659A.030(1)(g).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate

that: (i) he engaged in a protected activity, (ii) his employer subjected him to an adverse

employment action, and (iii) a causal link exists between the protected activity and the adverse

employment action.  *See Pool v. Vanrheen*, 297 F.3d 899, 910 (9th Cir. 2002), *quoting Bergene*

*v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001).

"At the summary judgment stage, the *prima facie* case need not be proved by a preponderance of

the evidence." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987), *citing Miller v.*

*Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986).  Once a plaintiff establishes a *prima*

*facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason

for its actions.  *See Manatt v. Bank of Am.*, 339 F.3d 792, 801 (9th Cir. 2003) (citation omitted).

If the defendant meets that burden, the burden shifts back to the plaintiff to establish that the

defendant's explanation was merely a pretext for impermissible retaliation.  *See id.*

Under very recent Supreme Court jurisprudence, the "protected activity" element of the

*prima facie* case may be established by showing that the plaintiff is in a family relationship with

another employee who engaged in protected activity.  *See Thompson v. N. Am. Stainless, LP*, 562

U.S. —, 131 S. Ct. 863, — (2011); *see also Condiff v. Hart County Sch. Dist.*, Case No.

09CV-00013-JHM, 2011 U.S. Dist. LEXIS 8023, *15-16, n. 4 (W.D. Ky. Jan. 26, 2011).

Page 17 - OPINION AND ORDER

Under well-established Ninth Circuit case law, the "causal link" element of the *prima facie* case may be established based solely on the timing of the adverse employment action vis-à-vis the conduct constituting engagement in a protected activity. *See, e.g., Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 507 (9th Cir. 2000), *citing Yartzoff*, 809 F.2d at 1375-1376; *Miller*, 797 F.2d at 732; *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997); *Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859, 870 (9th Cir. 1996).

Retaliation claims under O.R.S. 659A.030 are analyzed under the same framework as Title VII retaliation claims. *See, e.g., Harris v. Pameco Corp.*, 170 Or. App. 164, 179 (2000); *Pool v. Vanrheen*, 297 F.3d 899, 910 (9th Cir. 2002). The Oregon Court of Appeals has characterized the "causal link" element of the *prima facie* case as requiring only a "substantial factor" determination. *See Seitz v. State ex rel. Albina Human Res. Ctr.*, 100 Or. App. 665, 675 (Or. Ct. App. 1990).

Here, Willamette Tree does not dispute that it subjected Isaac to an adverse employment action when it terminated his employment. Instead, Willamette Tree moves for summary judgment as to the retaliation claims on the grounds that Isaac never engaged in protected activity of any kind and, alternatively, that if he did, there is no evidence of a causal link between his termination and his protected activity and, alternatively, that if there is evidence of such a causal link, that plaintiffs have not produced specific and substantial evidence that Willamette Tree's proffered nondiscriminatory explanation for its actions was pretextual.

Willamette Tree's primary argument against the claims alleged on Isaac's behalf – that plaintiffs have not produced evidence that Isaac ever engaged in protected activity of any kind – is not persuasive. As noted above, when Isaac observed Gutierrez behaving lewdly toward his

sister Floriberta, he told him, "¡Cálmate!" in an effort to cause him to stop his behavior. The United States Supreme Court recently addressed the issue of what kinds of behavior may qualify as protected opposition to discriminatory behavior for purposes of a Title VII retaliation claim in *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. —, 129 S. Ct. 846 (2009). Under the principles affirmed in *Crawford*, Isaac's injunctive statement to Gutierrez qualifies as protected activity in opposition to workplace discrimination.

The *Crawford* plaintiff's only action taken in opposition to discriminatory practices was to respond in the affirmative to her employer's inquiry whether she had ever witnessed inappropriate behavior in the workplace. *See Crawford*, 129 S. Ct. at 849. In ruling that characterizing workplace conduct as "inappropriate" in response to an employer's inquiry constituted opposition to such conduct for purposes of Title VII, the *Crawford* court noted that, for purposes of the statute, "the term 'oppose' . . . carries its ordinary meaning. . . : 'to resist or antagonize; to contend against; to confront; resist; withstand,' [or] 'to be hostile or adverse to, as in opinion.'" *Id.* at 850 (citations, internal modifications omitted). The court observed that "[c]ountless people were known to 'oppose' slavery before Emancipation, or are said to 'oppose' capital punishment today, without writing public letters, taking to the streets, or resisting the government," concluding that a speaker's indication that she disapproved of workplace conduct was sufficient to constitute opposition to that conduct. *Id.* at 851. Here, Isaac expressed clear disapproval of Gutierrez' harassing conduct and attempted to cause Gutierrez to cease engaging in the conduct. His statement to Gutierrez therefore constituted protected opposition to workplace discrimination for Title VII purposes.

Moreover, Willamette Tree does not dispute that Isaac's family members Emiteria,

Page 19 - OPINION AND ORDER

Floriberta, and Zuniga all engaged in protected activity prior to Isaac's termination. Even had Isaac never affirmatively opposed discriminatory behavior in the workplace, his family relationship to the other intervenor plaintiffs alone, or to any of them, would have been sufficient to satisfy the "protected activity" element of the *prima facie* case. *See Thompson*, 131 S. Ct. at —; *see also Condiff*, 2011 U.S. Dist. LEXIS 8023, *15-16, n. 4.

Willamette Tree's secondary, alternative argument – that plaintiffs cannot establish a causal link between Isaac's protected activity (or that of the other intervenor plaintiffs) and his termination – is likewise unpersuasive. Although Willamette Tree states expressly, both in its moving papers and in its reply memorandum, that a short period of time between protected activity and a subsequent adverse employment action is insufficient as a matter of law to establish causation, as noted above it is well settled that causation may be inferred from timing alone in Title VII actions:

> Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. *Yartzoff* [*v. Thomas*], 809 F.2d [1371,] 1375-76 (finding causation based on timing of retaliation); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings were sufficient to establish prima facie case of causation); *Hashimoto* [*v. Dalton*], 118 F.3d [671,] 680. Moreover, we have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant. *Strother* [*v. Southern Cal. Permanente Medical Group*], 79 F.3d [859,] 870-71.

*Passantino*, 212 F.3d at 507. Here, Isaac was terminated within two months of Isaac's confrontation of Gutierrez and within one month of Floriberta and Zuniga's report of Gutierrez' lewd conduct to Rodriguez. Moreover, while an inference of retaliatory intent based on timing alone may be rebutted where the employer lacked knowledge that the employee engaged in

protected activity prior to effecting the adverse employment action, *see Yartzoff*, 809 F.2d at

1376, it is undisputed that Rodriguez at all material times had actual, contemporaneous

knowledge of all intervenor plaintiffs' actions in opposition to discrimination in the Willamette

Tree workplace.  While Willamette Tree contends that the decision to terminate Isaac's

employment was made by Bañuelos and Gannon, rather than by Rodriguez, Isaac has testified

that the decision was made by Rodriguez himself.  Moreover, Bañuelos testified both that he

relied upon Rodriguez to serve as his "eyes on the field" and that Rodriguez was the sole source

of the information he relied upon for his decision to terminate Isaac.  Where an ultimate

decisionmaker without discriminatory animus takes an adverse employment action in reliance on

information provided by a biased subordinate employee, the biased subordinate's discriminatory

animus is imputed to the decisionmaker for purposes of Title VII.  *See, e.g., Galdamez v. Potter*,

415 F.3d 1015, 1026 (9th Cir. 2005), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 232-35

(1989); *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990).  Plaintiffs have therefore

adduced evidence sufficient to satisfy the "causal link" element of their *prima facie* case on

behalf of Isaac.

Finally, Willamette Tree's tertiary, alternative argument – that plaintiffs cannot show that

Willamette Tree's proffered nondiscriminatory reason for Isaac's termination was pretextual – is

similarly unpersuasive.  Willamette Tree states that Isaac was laid off because work was slow

and because Isaac was a troublemaker, and argues that plaintiffs have offered no evidence to

show that this nondiscriminatory reason was pretextual.  However, Isaac testified that two

workers were hired the same day that he was terminated, and although Willamette Tree disputes

Isaac's testimony, if its truth were established a finder of fact could reasonably rely on it to

conclude that the proffered explanation constituted pretext. In addition, Isaac has testified that he never engaged in any of the troublemaking conduct he was accused of. Indeed, according to Bañuelos' own testimony, the only evidence that Isaac was a troublemaker came from Rodriguez' report, and Bañuelos elected not to make any effort to investigate Rodriguez' version of events. Taken collectively, Isaac's testimony constitutes specific and substantial evidence that Willamette Tree's proffered reason may have been pretextual.

Because plaintiffs have established a *prima facie* case that Willamette Tree discharged Isaac in retaliation for his and/or his family members' opposition to workplace discrimination, and because plaintiffs have offered specific and substantial evidence that Willamette Tree's proffered reason for Isaac's termination was pretextual, Willamette Tree is not entitled as a matter of law to summary judgment in connection with the claims alleged on Isaac's behalf.

### C.    Claims Alleged on Behalf of Zuniga

On behalf of Zuniga, all plaintiffs allege a federal claim of retaliatory discharge in violation of 42 U.S.C. § 2000e-3(a). In addition, intervenor plaintiffs allege on Zuniga's behalf a second claim of retaliatory discharge in violation of Or. Rev. Stat. 659A.030(1)(f), and a claim of aiding and abetting retaliation in violation of Or. Rev. Stat. 659A.030(1)(g). Willamette Tree moves for summary judgment as to the retaliation claims on the grounds that there is no evidence of record of any causal link between Zuniga's protected activity and his termination, and, in the alternative, if plaintiffs have established the "causal link" element of their *prima facie* case, that they have failed to offer evidence to show that Willamette Tree's proffered nondiscriminatory reason for his termination was pretextual. Willamette Tree concedes that Zuniga engaged in protected activity when he and Floriberta reported Gutierrez' harassment of Floriberta to

Rodriguez, and does not dispute that it took adverse action against him when it terminated his employment.

For precisely the same reasons set forth above in connection with the claims alleged on behalf of Isaac, plaintiffs' evidence is sufficient to establish the "causal link" element of their *prima facie* claim.  Although Willamette Tree takes the position that Zuniga's termination decision was made by Bañuelos, and that Bañuelos was unaware of any of the intervenor plaintiffs' protected activity, Bañuelos' reliance on Rodriguez as his "eyes on the field" and Rodriguez' undisputed knowledge of intervenor plaintiffs' opposition to workplace discrimination (and reported discriminatory animus against the intervenor plaintiffs) permit plaintiffs to rely on a "cat's paw" theory to establish the "causal link" element of their case.  *See  Galdamez*, 415 F.3d at 1026.

Willamette Tree's proffered nondiscriminatory reason for Zuniga's termination is that he was discharged for fighting in the workplace.  Plaintiffs have offered evidence that Zuniga's workplace altercation with Gutierrez was instigated solely by Gutierrez, and that Zuniga acted solely in self-defense.  In addition, plaintiffs have offered evidence that Willamette Tree had no policy of terminating employees following a single incident of workplace violence, testifying that Gutierrez had been involved in workplace violence without being terminated on at least one prior occasion, in connection with which his sons and some of their associates made a show of intimidating force at the workplace, armed with knives.  This evidence is sufficiently specific and substantial to call the accuracy of Willamette Tree's proffered reason into question.

Because plaintiffs have established a *prima facie* case that Willamette Tree discharged Zuniga in retaliation for his and/or his family members' opposition to workplace discrimination,

Page 23 - OPINION AND ORDER

and because plaintiffs have offered specific and substantial evidence that Willamette Tree's proffered reason for Zuniga's termination was pretextual, Willamette Tree is not entitled as a matter of law to summary judgment as to the claims alleged on Zuniga's behalf.

## II.    Motion to Pierce the Corporate Veil

To establish a right to pierce the corporate veil and seek contribution from Gannon for any portion of a future judgment against Willamette Tree in this action, plaintiffs must demonstrate:  (i) such unity of interests between Willamette Tree and Gannon such that the two cannot meaningfully be described as separate; (ii) that failure to pierce the corporate veil would result in fraud or injustice; and (iii) either that Gannon initially incorporated Willamette Tree with fraudulent intent or that he subsequently misused the corporate form with fraudulent intent. *See Seymour*, 605 F.2d at1111; *Valley Cabinet*, 877 F.2d at 773-774.

As to the first element of the three-factor test, plaintiffs' evidence of unity of interest between Gannon and Willamette Tree is set forth above.  Plaintiffs offer evidence, *inter alia*, that Gannon and his wife routinely use Willamette Tree's assets to pay their personal and unrelated business expenses, and that Gannon has taken a substantial "loan" from Willamette Tree without subsequent repayment in whole or in part of interest or principal.  In opposition to plaintiffs' motion, Willamette Tree does not offer countervailing evidence, but rather indicates without particularity that it disputes some or all of plaintiffs' evidence (or plaintiffs' interpretation of the evidence).

As to the second element of the three-factor test, plaintiffs offer evidence that Gannon is considering placing Willamette Tree into bankruptcy, due to its poor economic health, suggesting that if a substantial money judgment were to issue against Willamette Tree, the company might

not have sufficient assets to satisfy the judgment. Willamette Tree does not dispute that Gannon

is considering placing Willamette Tree into bankruptcy, but contends nevertheless that plaintiffs

are unable to establish at this time that injustice would result if their motion were denied, because

they have not yet established either that they are entitled to a substantial money judgment against

Willamette Tree or that Willamette Tree would be unable to satisfy it were such a judgment to

issue.

Finally, as to the third element of the three-factor test, plaintiffs offer evidence that in

2009, at approximately the same time that this action was filed, Gannon awarded himself an

$80,000 bonus from Willamette Tree, despite acknowledging that Willamette Tree's business

was "horrible" that year, and had been "horrible" for the preceding several years. Plaintiffs note,

in connection with Gannon's bonus of 2009, that Willamette Tree's books indicate that the

company recorded a loss of approximately $400,000 in 2009, and that Willamette Tree had never

previously, in over 20 years of corporate existence under Gannon's control, paid out a bonus to

Gannon. When asked in deposition why he had elected for the first time to cause Willamette

Tree to pay him a substantial bonus in 2009, Gannon replied, "Because I felt I deserved it."

When asked in follow-up questioning why, given that he had characterized Willamette Tree's

business in 2009 and for the preceding few years as "horrible," he elected to take a bonus in

2009, the following exchange took place:

    A    Because I had to.

    Q    Why did you feel you had to?

    A    I don't know.

    Q    You don't know why you decided to give yourself a bonus of $80,000 in a

year that you had significant losses?

A      I already answered the question.

Q      [Y]ou said . . . before that you felt like you deserved it.  Were there any
particular accomplishments or. . . – why did you feel that you deserved it
so much?

A      I don't know.

Willamette Tree does not dispute that it awarded Gannon an $80,000 bonus in 2009, that it had

never before awarded any such bonus, that it incurred substantial losses of approximately

$400,000 in 2009, or that the decision to award the bonus was made in whole or in part by

Gannon himself, and offers no explanation for the decision to award the 2009 bonus other than

that provided by Gannon himself in the course of his deposition.

      Plaintiffs present compelling evidence as to each of the three elements of the Ninth

Circuit's three-factor test.  Nevertheless, I agree with Willamette Tree that plaintiffs' motion is

premature in light of plaintiff's burden to establish, in connection with the second element of the

three-factor test, that injustice would result if the motion were denied.  Because at this time no

money judgment has been entered against Willamette Tree on plaintiffs' claims in this action,

plaintiffs' contention that they risk the unjust result of receiving nothing on their claims if they

are not permitted to pierce Willamette Tree's corporate veil is necessarily speculative, even

taking into account the undisputed evidence that Gannon is considering the option of declaring

Willamette Tree's bankruptcy.

      Moreover, the parties appear to agree that Willamette Tree has disputed or intends to

dispute some or all of the factual bases on which plaintiffs rely.  The parties further appear to

agree that pretrial resolution of their factual disputes would require a continuance of the trial of

Page 26 - OPINION AND ORDER

this action, currently scheduled to begin April 19, 2011. In addition, because the evidence plaintiffs have offered in support of their motion to pierce the corporate veil would have the clear potential to prejudice any finder of fact tasked with determining Willamette Tree's liability on plaintiffs' claims in this action, it is appropriate to bifurcate trial of plaintiffs' claims against Willamette Tree from resolution of the question of plaintiffs' entitlement to pierce Willamette Tree's corporate veil. *See, e.g., EEOC v. Burrito Shoppe LLC*, Case No. 05-329-S-LMB, 2008 U.S. Dist. LEXIS 45540, *13-14 (D. Idaho, June 10, 2008).

In light of all of the foregoing, plaintiffs' motion to pierce the corporate veil is denied, with leave to refile in the event the court awards a money judgment against Willamette Tree on plaintiffs' claims in this action.

## CONCLUSION

For the reasons set forth above, Willamette Tree's motion (#76) for partial summary judgment is denied, and plaintiffs' motion (#82) to pierce the corporate veil is denied with leave to refile, as discussed above.

Dated this 14th day of March, 2011.

Honorable Paul Papak
United States Magistrate Judge

Page 27 - OPINION AND ORDER